UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY KERREOS,

                      Plaintiff,                Civil Action No. 13-14504
                                                  Honorable John Corbett O'Meara
            v.                              Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 9]

Plaintiff Tammy Kerreos brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 9], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") appropriately assessed Kerreos's credibility, weighed the medical evidence and concluded that she was not disabled, a finding that is supported by the substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Kerreos's motion [8] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On February 1, 2011, Kerreos filed an application for SSI, alleging disability as of January 1, 2002. (Tr. 162-67). The claim was denied initially on June 28, 2011. (Tr. 94-102). Thereafter, Kerreos filed a timely request for an administrative hearing, which was held on June 4, 2012, before ALJ JoErin O'Leary. (Tr. 34-56). Kerreos, represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert ("VE") Donald Hecker. (*Id.*). On August 8, 2012, the ALJ found Kerreos not disabled. (Tr. 15-33). On August 27, 2013, the Appeals Council denied review. (Tr. 1-4). Kerreos filed for judicial review of the final decision on October 28, 2013. [1].

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

2

severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Plaintiff's Testimony and Subjective Reports

Kerreos was 43 years old at the time of her application.  (Tr. 177).  She claims that the conditions preventing her from working are bipolar disorder, anxiety, depression, mood disorder and back pain, and that she has been disabled since January 1, 2002.  (Tr. 177; 182).  She complains of severe back pain that keeps her up at night and bipolar disorder that is presently uncontrolled.  (Tr. 197).  She also testified to additional pain in her left arm and neck that was presently not diagnosed, for which she was awaiting an upcoming appointment with a neurologist.  (Tr. 38; 41).  She attends physical therapy for her neck and arm pain, which generally varies between 6 and 8 out of 10, flaring to 10/10 about three or four times a month.  (*Id.*).  She reported taking numerous medications, and that she suffers side effects including diarrhea, nausea, sleepiness and an inability to think straight.  (Tr. 38; 43-44; 185; 239-40).  She

3

also reported needing to nap once or twice a day due to her medications and sleeplessness at night. (Tr. 40). She reported more frequent but less severe panic attacks while on medication. (Tr. 46). She testified to attending mental health therapy on and off, but that insurance issues have prevented her from doing so consistently. (Tr. 45). She testified that she was seeking counseling with her pastor in the interim. (*Id.*).

At the time of her application Kerreos resided in a homeless shelter. (Tr. 196). She reported not engaging in self-care due to depression. (Tr. 197). At the hearing, she testified that her self-care was limited only by her arm and back pain. (Tr. 39). The shelter provided her food and she was able to clean her room, but does not engage in other household chores. (Tr. 198). She reported being able to drive and go out alone, but that she does not go out and does not shop. (Tr. 199). She testified to being able to drop her kids off at school unless she had taken medication, in which case her older kids take her younger ones to school. (Tr. 46). She does not have any hobbies and does not interact with others. (Tr. 200). She admitted to drinking in the past, but claimed she stopped the Christmas prior. (Tr. 48). She also admitted to smoking marijuana two to three times a week. (*Id.*).

Kerreos last worked as a cashier at a dollar store for a month in 2001, and she reported stopping that job due to her conditions (although she reported to the consulting examiner that she stopped working because her husband-to-be did not want her to work). (Tr. 183; 268). She complains that her conditions interfere with her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate and use her hands. (Tr. 201). She has trouble sitting for longer than 30 minutes, standing for longer than 15 minutes or walking for more than 10-15 minutes. (Tr. 40). She testified that she can only lift with her right arm. (Tr. 41). She reported following instructions and getting along with others "ok." (Tr. 201-202). She does not handle

4

stress well. (Tr. 202). She testified that she has trouble following what she reads and also following television plots. (Tr. 50). She also testified that she has difficulty remembering appointments and other things. (Tr. 49).

Kerreos's mother filed a third-party report that somewhat supported her daughter's subjective allegations. (Tr. 204-211). Her mother reported performing most of the childcare, that Kerreos's daughter helps with household chores, that Kerreos will go out and shop with family members, and that she spends time with her family daily. (Tr. 205-208). She reported Kerreos does not drive due to her medications. (Tr. 207). She further reported that Kerreos lost a job due to missing work and screaming at her boss. (Tr. 210). She reported that Kerreos does not get along well with others and that she has daily mood swings. (Tr. 211).

### 2. *Medical Evidence*

Kerreos does not take direct issue with the ALJ's evaluation of the medical evidence in this case. Further, the Court has reviewed the entire record, and will discuss the relevant portions of that record within the analysis portion of this Report and Recommendation.

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ determined that Kerreos was not disabled. The ALJ first noted that there had been a prior decision on April 8, 2010, denying Kerreos benefits. (Tr. 18). The ALJ found she was not bound by that decision, however, because there was evidence of additional impairments "imposing significant additional restrictions." (*Id.*).

At Step One, the ALJ concluded that Kerreos had not engaged in substantial gainful activity since the date of her application, January 20, 2011. (Tr. 20). At Step Two, she found the following severe impairments: bipolar disorder, history of substance abuse, back pain, and mild

cervical spondylosis. (*Id.*). She concluded that two other impairments, migraine headaches and ear tubes or ear pain, were not severe, as Kerreos only complained of occasional headaches, physical examinations were generally normal, and she had only occasional ear infections. (Tr. 20-21).

At Step Three the ALJ determined that none of Kerreos's impairments, either alone or in combination, met or medically equaled a listed impairment, specifically comparing them to Listings 1.04 (Disorders of the Spine), 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). In making this determination, the ALJ concluded that Kerreos had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation. (Tr. 21-22).

Next, the ALJ assessed Kerreos's residual functional capacity ("RFC"), finding her capable of light work

> except she can never climb ladders, ropes, or scaffolds. She can never perform overhead reaching with the left upper extremity. She should not work with the general public. The claimant is limited to simple tasks performed in a low-stress work environment, defined as work requiring no more than occasional decision making, no more than occasional changes in the work setting, and no more than occasional use of independent judgment. Finally, she is unable to perform fast-paced, production assembly-line type work.

(Tr. 22-23). At Step Four, the ALJ determined that Kerreos had no past relevant work. (Tr. 28). At Step Five the ALJ concluded that, based on Kerreos's age, education and RFC, there were a significant number of jobs in the national economy that she could still perform. (Tr. 28-29). The ALJ based this conclusion, in part, on VE testimony that found that a hypothetical claimant limited to Kerreos's RFC would still be capable of performing the jobs of cleaner (8,000 jobs in

the state of Michigan), packer (3, 500 jobs) and checker/inspector (4,500 jobs). (Tr. 53-54).[1]

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court

---

[1] The VE further testified that if the hypothetical claimant were limited to sedentary work, with the remaining additional limitations, she would still be able to perform the jobs of surveillance system monitor (750 jobs), inspector (3,500 jobs) and packer (4,500 jobs). (Tr. 54). When asked to add limitations that the hypothetical claimant needed to be off task 20% of the work day or was absent more than three days a month, the VE testified there would be no work. (Tr. 54-55).

7

is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

It is difficult to discern Kerreos's specific arguments in support of her motion for summary judgment. Her motion consists mainly of a compilation of quotations of black letter case law, and a recitation of her own testimony, with little accompanying analysis or application of the law to the facts of her case. Despite the fact that her brief asserts that that the ALJ erred in "failing to properly evaluate the medical records and opinions of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [her] impairments," Kerreos does not actually appear to challenge the ALJ's assessment of the medical evidence, nor does she cite any medical opinion for which the ALJ failed to account. [8 at 7-12]. In fact, her brief cites to no medical evidence whatsoever. [*See generally* 8]. And although her argument heading does not

suggest she takes issue with the ALJ's credibility determination, the entirety of the evidence she cites in support of her argument is her own subjective testimony and reports. (*Id.* at 9-11).

Kerreos's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Kerreos's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). While Kerreos's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, and is a somewhat modified version of the brief submitted in that case,[2] the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Kerreos has waived her arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

---

[2] Here, Kerreos has condensed the usual six-page recitation of black letter law down to two-and-a-half pages, omitting any discussion of the treating physician rule, despite the heading of her brief appearing to take issue with the same. Nevertheless, Kerreos fails to tie any of the stated evidence (which consists solely of citations to her own testimony) to the claims of error actually alleged, and thus an argument could be made that she has effectively waived most if not all of her claims of error.

9

deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will consider all of the evidence in light of the arguments raised (albeit vaguely) by Kerreos.

### A. Credibility

Kerreos appears mostly to be challenging the ALJ's assessment of her credibility, as the entirety of the evidence she discusses in support of her claims of error is her own subjective reports and testimony. The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

20 C.F.R. 404.1529(a) makes clear that, "statements about your pain or other symptoms will not alone establish that you are disabled." Thus, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

The ALJ, in her opinion, cited all of Kerreos's testimony, and spent several pages discussing her assessment of Kerreos's credibility. (Tr. 23-27). Specifically, the ALJ found that the medical evidence of record was inconsistent with Kerreos's claims of disabling pain. (Tr.

10

23-25). This was an appropriate consideration. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") (citing *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). The ALJ noted that objective findings regarding Kerreos's back pain were generally benign, with occasional findings of a reduced range of motion and spasm in her mid and lower back, but with consistently negative results on straight leg raising tests and no evidence of radiculopathy. (Tr. 23-24; 274-81; 319; 322; 386; 388-94; 471-72). She also had no evidence of neurological deficits, and showed good strength in her extremities. (Tr. 274-81; 322; 386; 388-94; 471-72). She had a normal gait and walked without an ambulatory device. (Tr. 274-81). Despite these generally normal findings, the ALJ nevertheless gave some credit to Kerreos's testimony in limiting her to only light work and no climbing of ladders, ropes or scaffolds. (Tr. 24).

With regard to her claims of disabling arm and neck pain, the ALJ again noted that the majority of clinical findings were inconsistent with such an allegation, as Kerreos routinely had good grip strength and good cervical range of motion. (Tr. 24; 369-71; 390-94; 402-406; 409-416; 436-43; 450-57; 471-72). The ALJ also noted that later tests revealed some weakness in Kerreos's shoulder rotators and flexors on the left, as well as mild cervical spondylosis accompanied by a decreased sensation in the distribution of the C6 vertebra. (Tr. 404-405; 411; 436; 439-40). As a result, the ALJ limited her to no overhead reaching with her left upper extremity. (Tr. 24).

With regard to her bipolar disorder, the ALJ noted that Kerreos had undergone very little specialized treatment for this condition, that when she was treating with a therapist she discontinued service without attaining any goals and with several no-show appointments and

11

that, during a consultative examination she was able to engage her short term memory in exercises including recalling objects after three minutes and reciting numbers backwards. (Tr. 24-25; 268-73; 282-309; 396-97; 405-406; 417-26). The ALJ concluded that Kerreos's moderate limitations in social functioning and maintaining concentration, persistence and pace were incorporated into the RFC through limitations involving interactions with the public, and with pace, speed, skill and judgment restrictions. (Tr. 25).

In rendering her opinion, the ALJ gave great weight to the reviewing doctor Bruce Douglass's opinion that Kerreos was capable of performing routine two-step tasks on a sustained basis and that she might not work well with the public. (Tr. 26; 88-90). The ALJ, finding that Dr. Douglass was an expert in the field and that his opinion was consistent with the medical evidence of record, then incorporated these limitations into the RFC. (Tr. 26). She also gave some weight to the opinion of the consulting mental examiner, Dr. Bruce Fowler. (Tr. 26-27; 268-73). She gave great weight to the part of his opinion finding Kerreos able to understand and follow direction of moderate complexity but unable to perform extremely difficult tasks or make independent work-related decisions. (Tr. 27; 273). However, she gave little weight to his conclusion that Kerreos's mood problems, coupled with her claims of pain (if verified) would make it difficult for her to perform any job on a consistent basis. (*Id.*). The ALJ noted that this conclusion was inconsistent with the fairly benign findings of the examination, which found Kerreos able to properly respond to a number of the mental status examination questions asked of her, and, to the extent it related to Kerreos's physical pain, dealt with an area outside of Fowler's expertise. (Tr. 27; 268-73). Kerreos has not made any specific argument as to the ALJ's evaluation of the opinion evidence in this case and the Court finds that the ALJ gave good

reasons for weighing these opinions as she did.[3]

Instead, Kerreos takes issue with the ALJ's failure to credit her claims of being unable to lift anything with her left arm, being unable to sit and/or stand a sufficient amount of time to perform light work, and failing to credit her claims of needing to nap twice a day and that she is unable to stay on task. However, the ALJ specifically noted these claimed limitations in her decision (Tr. 23), and her analysis demonstrates why she did not find these alleged limitations credible. (Tr. 23-28). Substantial evidence supports the ALJ's finding. As stated above, regarding Kerreos's inability to lift anything with her left arm, some objective medical evidence supports the ALJ's finding that Kerreos experiences some limitation in this regard, as reflected by records noting some weakness in her C6 distribution and some shoulder flexor weakness. (Tr. 403-404; 436; 438-40). However, the ALJ also noted that Kerreos did not begin complaining of this pain until 2012, and that the majority of the findings both before and after that date involving the strength in her left arm (including motor and grip strength) were normal. (Tr. 24; 245-46; 252; 274-81; 313-14; 319; 322; 386; 408; 410; 412; 453; 463-64; 471-72).[4] With regard to her claims of inability to sit, stand, and walk, the ALJ noted these claims and dismissed them, finding little evidence of any treatment specific to Kerreos's lower back, and that the treatment of record recorded mostly normal findings other than some isolated mild tenderness and spasm. (Tr. 245-46; 252; 274-81; 313-14; 319; 322; 386; 390-92; 394; 408; 410;

---

[3] Multiple other medical records also support the ALJ's conclusion. For instance, at a February 18, 2011 doctor's appointment (for a cough), Kerreos reported "doing well on her psych meds and denies any suicidal ideations or any mood problems." (Tr. 386). At a doctor's visit on December 30, 2011, Kerreos's bipolar disorder was reported to be "stable on Depakote ER." (Tr. 406). At a visit on May 7, 2012, the doctor reported that Kerreos "has a normal mood and affect. Her behavior is normal. Judgment and thought content normal." (Tr. 412).

[4] Here it is worth recalling one of the legal standards that governs this Court's review; if the Commissioner's decision is supported by substantial evidence, "it must be affirmed … even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

453; 463-64; 471-72). With regard to Kerreos's ability to stay on task, the ALJ noted Kerreos's claims of trouble concentrating, and found that she was capable of more than she claimed, relying principally on the findings of the consulting and reviewing physicians, whose limitations she incorporated into the RFC, a reliance Kerreos does not challenge. (Tr. 24-26; 88-90; 268-73). Finally, although the ALJ did not specifically address Kerreos's claimed limitation of a need to nap twice a day, allegedly as a result of her medication, this at most is harmless error where there is no evidence in the record of her reporting such a side effect to her doctors or seeking a change in medication as a result. *See Farhat v. Sec'y of Health and Human Servs.*, No. 91-1925, 1992 U.S. App. LEXIS 18401 (6th Cir. July 24,1992) (lack of objective medical evidence supporting claim of side effect insufficient to satisfy burden to show disability); *Bentley v. Comm'r of Social Security*, 23 Fed. Appx. 434, 435 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health & Human Servs.*, No. 92-1632, 1993 U.S. App. LEXIS 20055 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy).

In sum, the Court finds that the ALJ thoroughly and accurately evaluated Kerreos's credibility, and that substantial evidence of record supports her analysis.

### B. Adequacy of Hypothetical

Kerreos also takes issue with the ALJ's presentation of hypothetical questions to the VE. While couched as a Step Five challenge, the content of her argument makes clear what she is really challenging is the ALJ's RFC assessment to the extent it failed to account for her claimed limitations of a need to nap twice a day and difficulty staying on task. [8 at 9-12]. As noted

above, the ALJ properly discounted these allegations as not being consistent with the evidence of record as a whole. An ALJ is only required to include in her RFC, and thus in a hypothetical question, those limitations that she finds credible. *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). Because the Court finds no error with the ALJ's credibility determination, it follows on these facts that she did not err in generating the RFC or in presenting hypothetical questions to the VE that omitted these alleged limitations.

In sum, the Court finds, upon review, that the ALJ's credibility and RFC determinations, and thus her ultimate conclusion, are supported by substantial evidence of record, and recommends it be affirmed.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Kerreos's Motion for Summary Judgment **[8]** be **DENIED**, the Commissioner's Motion **[9]** be **GRANTED** and this case be **AFFIRMED**.

Dated: September 19, 2014                s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail

to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 19, 2014.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager